# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

TARANPREET SINGH,

                Petitioner,     :           Case No. 1:24-cv-156

     - vs -                           District Judge Matthew W. McFarland
                                      Magistrate Judge Michael R. Merz

WARDEN, Noble Correctional
  Institution,

                                    :
           Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case was brought by Petitioner Taranpreet Singh pursuant to 28 U.S.C. § 2254 with the assistance of counsel to obtain relief from his convictions for rape, kidnapping, and assault in the Common Pleas Court of Butler County, Ohio (Petition, ECF No. 1). On the Order of Magistrate Judge Caroline H. Gentry, Respondent has filed the State Court Record (ECF No. 4) and a Return of Writ (ECF No. 5). Petitioner has also filed a timely Traverse (ECF No. 9), rendering the case ripe for decision. The Magistrate Judge reference in the case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 10).

1

**Litigation History**

On February 25, 2021, the Butler County grand jury indicted Singh on three counts of rape in violation of Ohio Rev. Code § 2907.02(A)(2) (counts 1, 5, and 7), five counts of kidnapping in violation of Ohio Rev. Code § 2905.01(A)(4) and § 2905.01(A)(3) (counts 2, 3, 6, 8 and 9), and one count of assault in violation of Ohio Rev. Code § 2903.12(A) (count 4). Counts 7 through 9 contained firearm specifications. (Indictment, State Court Record, ECF No. 4., Ex. 1). A petit jury found Singh guilty of three offenses relating to the victim identified in the Indictment as Jane: rape (count one), kidnapping in violation of Ohio Rev. Code § 2905.01(A)(4) (count three), and assault (count four), but acquitted him on all other charges. *Id.* at Ex. 7. The trial court sentenced Singh an indefinite prison term of twelve to sixteen years.

With the assistance of retained counsel, Singh appealed to the Ohio Twelfth District Court of Appeals raising seven assignments of error (Appellant's Brief, State Court Record, ECF No. 4, Ex. 9). That court affirmed the conviction. *State v. Singh,* 2022-Ohio-3385 (Ohio App. 12th Dist. Sept. 26, 2022). Singh appealed to the Ohio Supreme Court, but that court declined jurisdiction. *State v. Singh,* 168 Ohio St. 3d 1482 (2022).

On March 23, 2024, Singh filed his Petition in this Court, pleading one Ground for Relief:

> The State of Ohio failed to produce sufficient evidence to convict
> the Petitioner of the counts in the indictment in violation of his right
> to due process under the Fifth Amendment made applicable to all
> state criminal prosecutions by the Fourteenth Amendment to the
> federal Constitution.

(Petition, ECF No. 1, PageID 8).

The State of Ohio raises no affirmative defenses, but asserts the Twelfth District's decision that there was sufficient evidence is entitled to deference under 28 U.S.C. § 2254(d)(1).

2

Petitioner's Traverse attempts to rebut that finding.

## Analysis

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge

4

simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Considering the testimony and evidence presented at trial, the Twelfth District found the following facts had been established:

### A. Incident with Jane

{¶4} In the evening hours of September 4, 2019, Jane was walking from her home in Hamilton, Ohio to a friend's home. A man, later identified as appellant, driving a black vehicle approached her and offered to give her a ride. Appellant picked up Jane near a Circle K convenience store that was located on Pleasant Avenue in the Lindenwald neighborhood of Hamilton. Appellant then drove into the Circle K parking lot and ran inside the store to purchase condoms while Jane waited inside the vehicle.

{¶5} Upon returning to the vehicle, appellant drove Jane to a different neighborhood in Hamilton, one located on the east side of the railroad tracks. Appellant stopped in front of an abandoned building located at 906 East Avenue. Appellant claimed he had lost his wallet and needed to look for it. He got out of the car and asked to search Jane's side of the vehicle. However, once Jane got out of the vehicle, appellant grabbed her by her hair and dragged her into the abandoned building.

{¶6} Appellant pulled Jane into one of the building's back rooms. As he was doing so, appellant struck Jane in the head and beat her "in the front" and "in the back." Jane attempted to block her face from the blows by putting up her hands. While she was being struck by appellant, Jane urinated on herself. Appellant told Jane to stop screaming or he would continue to beat her. He also told Jane to take off her clothes and kiss him. Jane took of her clothing and tried to kiss appellant, but she was too upset. Appellant then raped Jane by inserting his penis into her vagina. Appellant did not wear a condom and ejaculated inside her.

{¶7} Once the sexual act was complete, appellant left the building. Jane got dressed and started walking towards her home, calling her mother as she exited the abandoned building. Jane did not ask anyone walking or driving by for help and did not call the police at that time as she was "in shock of everything" and just wanted her mother.

{¶8} Jane's mother met up with Jane. She described the physical state she found Jane in, stating that Jane "had blood and – well, she was crying, and [had] dirt running down her face. The side of her head was swollen. Her hair was all messed up. * * * [S]he had urinated on herself and had dirt all over. She looked pretty bad." Jane's mother walked Jane home, where Jane immediately tried to clean herself. Jane explained she used a douche to try to expel appellant's sperm.

{¶9} The next day, approximately eight hours after the incident, Jane called the police to report the rape. Jane was also examined by SANE nurse Meredith Gregory at the Bethesda Butler Hospital on this date. Gregory noted that Jane appeared anxious and sad. Gregory observed an abrasion to Jane's left nostril and left upper lip and noted that there were "multiple contusions, abrasions, erythema, which is redness, to [Jane's] back" near her shoulders. Gregory did not, however, see any bruising or visible injuries to the top of Jane's head, to her face or forehead, or to her thighs, buttocks, or genitalia. Gregory also did not find any shards of glass or debris in or on Jane's person during the examination, despite broken glass having been scattered throughout the abandoned building.

{¶10} For the rape kit, Gregory collected a DNA standard from Jane using an oral swab. Jane's perianal area, her labia minora, her labia majora, and vagina were swabbed for evidence. The underwear and shirt Jane had worn on the night of the incident were collected as evidence. The underwear had blood spots on it. Photographs of Jane's injuries and the clothing she had worn the evening of September 4, 2019 were admitted into evidence at trial.

{¶11} After her initial report of the sexual assault and her examination by the SANE nurse, Jane became uncooperative with the city of Hamilton detective investigating her claims. Jane failed to appear for two scheduled interviews. It was not until May 27, 2020, more than eight months after initially reporting the rape, that Jane met with Detective Frank Botts. At this time, Jane told Detective Botts that she had seen the man who had assaulted her driving in the area where she lived. Jane had not called law

enforcement when this occurred, but rather had run back inside her home.

{¶12} A six-man photo lineup was administered to Jane on May 27, 2020. Jane identified another man, "S.S.," as the perpetrator of the sexual assault, stating "that kinda looks like him, but has a long hair [sic] and beard." Appellant's picture was not included in the lineup presented to Jane.

{¶13} A DNA sample was obtained from S.S. A DNA sample was also obtained from appellant, who was developed as a suspect following an investigation into sexual assaults reported by other victims. Timothy Augsback, a BCI forensic scientist, tested the swabs and underwear collected as part of Jane's rape kit against the DNA samples obtained from S.S. and appellant. Augsback testified that S.S. was not a contributor to any of the DNA mixtures found in the samples from Jane's rape kit. However, the perianal swab from the rape kit had a mixture of appellant's and Jane's DNA, with appellant being the major contributor. Augsback explained how rare the match would be in the general population of unrelated individuals, stating that appellant's "DNA profile in the sperm fraction was one in 50 million unrelated individuals." The swab collected from Jane's labia minora was also tested and found to contain a mixture of appellant's and Jane's DNA. Augsback testified that the estimated frequency of the occurrence of appellant's DNA profile was rarer than one in one trillion unrelated individuals. Finally, Augsback tested the underwear worn by Jane on the night of the sexual assault, which was found to contain a mixture of appellant's and Jane's DNA. According to Augsback, the estimated frequency of the occurrence of appellant's DNA profile was rarer than one in one trillion unrelated individuals.

{¶14} At trial, defense counsel questioned Jane about her use of drugs and possible prostitution on the streets of Hamilton. Jane admitted she had a 2017 conviction for possession of heroin but denied she had used drugs on the date she was assaulted by appellant. Jane also denied that she had ever prostituted herself. She stated that when appellant offered her a ride on September 4, 2019, they "never discussed anything about money or any sexual acts at all." She also denied knowing Daisy or Marie or making plans with another women, "N.C.," to sue appellant following his criminal trial.

• * * *

{¶21} Using various businesses' surveillance footage and information obtained from Jane, Daisy, and Marie, law enforcement

was able to identify appellant as a suspect. Detective Kiep conducted a social media search on appellant and discovered images of appellant at a gun range holding a semi-automatic handgun. During the execution of a search warrant at appellant's home, officers discovered a t-shirt that appeared to be a match for the t-shirt appellant was observed wearing on the Circle K surveillance footage from September 4, 2019, the date Jane was sexually assaulted. Officers were unable to locate a handgun in appellant's home, his vehicle, or his wife's vehicle. However, officers did find a package for a "Crossman handheld pellet gun," which displayed an image of a handgun on it.

{¶22} On February 18, 2021, appellant was arrested and interviewed by Detective Botts after being *Mirandized.* The interview was recorded and a portion of it played for the jury at trial. Appellant started the interview by claiming he had "never ever" picked up prostitutes or females who walked the street. However, after being advised of the rape allegations Jane, Daisy, and Marie had made against him, appellant changed his story. He told Detective Botts that there were "two or three times" he had picked up women and paid them for sex – an activity he claims he engaged in once every six or seven months. He denied, however, that he raped any of these women or struck any of them. He also denied forcing any of the women into his car or using a gun. He claimed that the women he picked up for sex, including a woman on East Avenue in Hamilton, were responsible for picking the spots where they engaged in sex. Appellant was unable to recall the names of the women he paid for sex. When shown photographs taken from the September 4, 2019 Circle K security footage, appellant admitted the photographs were of him.

*State v. Singh*, *supra* at ¶¶ 3-14, 21-22.

Singh raised his sufficiency of the evidence claim as his third assignment of error on direct appeal. The Twelfth District considered it along with his fourth assignment of error on the manifest weight of the evidence[1] and wrote:

---

[1] When sufficiency of the evidence and manifest weight of the evidence assignments of error are both raised on direct appeal, it is common for Ohio appellate courts to decide them together because if a verdict is not against the manifest weight, *a fortiori* there is sufficient evidence to convict. *Nash v. Eberlin,* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio May 10, 2011)(White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011)(Merz, M.J.). A weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).

{¶55} In his third and fourth assignments of error, appellant contends his convictions for raping, kidnapping, and assaulting Jane were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶56} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶57} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further, although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of

sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶58} Appellant was convicted of rape in violation of R.C. 2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." A person acts purposely "when it is the person's specific intention to cause a certain result." R.C. 2901.22(A). "Force" is defined by the Revised Code as "any violence, compulsion, or constraint physically exerted by any means or against a person or thing." R.C. 2901.01(A)(1). Sexual conduct includes "vaginal intercourse between a male and female" and "without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another." R.C. 2907.01(A).

{¶59} Appellant was also convicted of kidnapping in violation of R.C. 2905.01(A)(4), which provides that "[n]o person, by force, threat, or deception, * * ** shall remove another from the place where the other person is found or restrain the liberty of the other person, * * * [t]o engage in sexual activity, as defined in Section 2907.01 of the Revised Code, with the victim against the victim's will." Sexual activity means sexual contact or sexual conduct, including vaginal intercourse. R.C. 2907.01(C).

{¶60} Finally, appellant was convicted of assault in violation of R.C. 2903.13(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another." Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." Any injury, illness, or other physiological impairment, regardless of its gravity or duration, constitutes "physical harm" to a person. R.C. 2901.01(A)(3).

{¶61} After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find appellant's convictions for rape, kidnapping, and assault are supported by sufficient evidence and are not against the manifest weight of the evidence. The state presented testimony and evidence from which the jury could have found all the essential elements of the offenses proven beyond a reasonable doubt. Jane testified that appellant picked her up near the Circle K on Pleasant Avenue and drove her to an abandoned building on East Avenue in Hamilton. Using his need to search for his missing wallet as a ruse, appellant approached Jane on the passenger side of the vehicle, grabbed her hair and

10

forcibly pulled her away from the car and into a back room of the abandoned building. While forcing Jane into the abandoned building, appellant assaulted Jane, striking her in the head and beating her "in the front" and "in the back." Once inside the back room, appellant engaged in forcible sexual conduct with Jane, vaginally raping her with his penis before ejaculating inside of her.

{¶62} Jane was injured during the incident. As the SANE nurse who examined Jane testified, Jane had an abrasion to her left nostril and upper lip as well as "multiple contusions, abrasions, erythema, which is redness, to [her] back" near her shoulders. Forensic evidence obtained during the SANE nurse's examination was later tested by a BCI forensic scientist. Appellant's DNA was found on swabs taken from Jane's perianal area and labia minora and on the underwear Jane had worn on the night of the sexual assault. Jane's testimony, evidence gathered during her sexual assault examination, and the forensic analysis of the rape kit was evidence demonstrating appellant assaulted, kidnapped, and raped Jane.

{¶63} Appellant challenges Jane's credibility and the weight given to her testimony. Appellant, who had admitted to picking up prostitutes in Hamilton, theorizes that Jane was a prostitute and that she and other prostitutes had developed a scheme to try to extort him for money or set up a civil suit for damages. Appellant contends the fact that Marie knew of a prostitute storing his semen in her freezer demonstrated prostitutes in Hamilton were acting with nefarious intentions. Appellant contends Jane lied when she denied being a prostitute, lied about not knowing Marie or Daisy, and lied about not making plans with them or anyone else to sue appellant following the criminal trial. To support his claim that Jane was not a credible witness, appellant relies on the fact that Jane has a prior felony conviction for possession of heroin and the fact that she gave inconsistent stories about where appellant had picked her up on the night of the rape. When Jane originally gave a statement to officers, she had claimed that appellant had offered her a ride and picked her up at Circle K. However, after surveillance footage from the store showed her arriving at the store in appellant's car, Jane later changed her story and stated appellant picked her up "near" Circle K.

{¶64} Appellant further contends Jane's appearance and lack of serious physical injuries in the aftermath of the alleged rape, assault, and kidnapping also cast doubt on the credibility of her testimony. Appellant argues that if the events described by Jane had actually occurred, then one would have expected the SANE nurse to have observed more injuries to Jane's scalp and face, such as missing hair, bruises, or scratches, as well as visible injuries to her back, thighs,

11

or vagina, including bruises and cuts from broken glass that was spread out in the abandoned building. Appellant contends that one would have also expected to find blood on more than Jane's underwear. Appellant noted that Jane's shirt, though dirty, did not have any blood on it.

{¶65} Appellant also contends that Jane's behavior during the kidnapping and sexual assault and her actions after the incident also cast doubt on the credibility of her story. Appellant notes that Jane admitted that she did not fight back or try to escape from appellant during the sexual assault, and once appellant finished and left her alone in the empty building, she did not immediately call police. Instead, Jane got dressed, started walking home, and called her mother. She did not try to flag anyone walking or driving by for help. Jane then waited approximately eight hours to report the sexual assault to the police. After her initial report, Jane became uncooperative with the police, failing to appear for scheduled interviews. Jane waited until May 2020 to report seeing the man who raped her driving in the area where she lived.

{¶66} The jury, through defense counsel's cross-examination of the state's witnesses and closing arguments, was presented with appellant's theory that Jane lied about the events that occurred on September 4, 2019. They heard about the inconsistencies in her story and were given the opportunity to weigh her version and explanation of events against appellant's version. Jane explained that once appellant had her in the back room of the abandoned building, she ceased resisting and screaming for help so that appellant would stop beating her. She also explained that after the sexual assault, she was "in shock of everything" and just wanted her mother and the safety of her home.

{¶67} "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. This is because, "[a]s the trier of fact in [the] case, the jury was in the best position to judge the credibility of witnesses and the weight to be given to the evidence." *State v. Johnson*, 12th Dist. Warren Nos. CA2019-07-076 and CA2019-08-080, 2020-Ohio-3501, ¶ 24. The jury considers any inconsistencies in the witnesses' testimony and resolves them accordingly, believing all, part, or none of each witnesses' testimony. *State v. Enoch*, 12th Dist. Butler No. CA2019-07-117, 2020-Ohio-3406, ¶ 27. Here, the jury clearly found Jane's testimony, which was corroborated by the visible

12

> injuries she sustained and the DNA evidence obtained from the rape kit, credible.

> {¶68} Given the evidence presented at trial, the jury was entitled to find beyond a reasonable doubt that appellant committed assault, kidnapping, and rape against Jane. Appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. The jury did not lose its way and create such a manifest manifest miscarriage of justice that appellant's convictions must be reversed and a new trial ordered. Appellant's third and fourth assignment of error are overruled.

*State v. Singh*, 2022-Ohio-3385, ¶¶ 55-68.

The Twelfth District acknowledged the efforts made at trial to undermine Jane's credibility, but held that the jury was entitled to believe Jane and that Jane had testified to sufficient facts to convict Petitioner of rape, kidnapping, and assault.

In his Traverse Petitioner acknowledges that a federal habeas court "cannot second-guess credibility issues while reviewing the state's treatment of a constitutional claim" but then asserts [i]t can, however, review the evidence presented by the state of Ohio and determine sufficiency. (ECF No. 9, PageID 1251). To the extent this assertion claims we can review the evidence *de novo*, it is in error. Because the Twelfth District decided the sufficiency claim on the merits, our review must be deferential. We can only grant the writ if the Twelfth District's decision is an unreasonable application of clearly established Supreme Court precedent, in this case *Jackson v. Virginia*, 28 U.S.C. § 2254(d)1). The Twelfth District's decision evinces the incorporation of the *Jackson* standard in Ohio law and reasonably determines that the State provided sufficient evidence to the jury to satisfy the *Jackson* standard.

Deference to the Twelfth District's decision is also required unless the decision is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[s]." 28 U.S.C. § 2254(d)(2). In attempting to refute the Twelfth District's factual

13

findings, counsel gives a four-page purported summary of the evidence (Traverse, ECF No. 9, PageID 1251-54). This portion of the Traverse contains not a single reference to the record, despite Judge Gentry's provision in the Order for Answer that "[a]ll papers filed in the case by either party [after the State Court Record is filed] shall include record references to the PageID number." The State Court Record as filed contains a full transcript of all four days of the trial, a total of 954 pages, so it was readily available to counsel even if Petitioner did not retain a copy acquired for direct appeal. Petitioner's counsel took nearly 100 days to file the Traverse, but still provided no record references.

The purpose of requiring record citations is, one hopes, obvious. With record references the Court can easily see whether a witness actually said what counsel argues he or she said. Without such references the job of combing the record to search for support for statements of fact is cast back upon the Court. That is counsel's job, not the Court's. The Court should not consider as true any assertion of fact about trial testimony that is not supported by a record reference.

Considering only the DNA evidence, it proves beyond a reasonable doubt that Petitioner was the male who had sexual contact with Jane on the relevant date. The forensic expert testified that the probability that the sperm recovered from Jane's body and underwear came from someone other than Petitioner was less than one in a trillion. The Court takes judicial notice that on the relevant date there were fewer than one trillion males alive in the world, much less in Hamilton, Ohio. The physical injuries Jane displayed were completely consistent with the use of force. The Magistrate Judge does not understand Petitioner to contest the DNA evidence at all.

Petitioner has not shown by clear and convincing evidence that the Twelfth District's factual findings are erroneous and they are therefore entitled to deference.

14

**Conclusion**

Petitioner's sole Ground for Relief is without merit. The Magistrate Judge therefore respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

April 16, 2025.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #