IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| TARANPREET SINGH, | : | Case No. 1:24-cv-156 |
| Petitioner, | : | Judge Matthew W. McFarland |
| v. | : | |
| WARDEN, NOBLE CORRECTIONAL INSTITUTION, | : | |
| Respondent. | : | |

## ORDER AND OPINION

This matter is before the Court on the Report and Recommendations (Doc. 11) of United States Magistrate Judge Michael R. Merz. Petitioner filed Objections (Doc. 14), to which Respondent did not respond. Thus, this matter is ripe for the Court's review.

## BACKGROUND

On March 23, 2024, Petitioner Taranpreet Singh filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Habeas Petition, Doc. 1.) Specifically, he seeks habeas relief from his state convictions for rape, kidnapping, and assault by arguing that he was convicted without sufficient evidence. (*Id.* at ¶¶ 32-44.) Petitioner unsuccessfully raised similar sufficiency arguments with Ohio's Twelfth District Court of Appeals. (*Id.* at ¶ 24); *State v. Singh*, 2022-Ohio-3385, 2022 WL 4476557, at *9-12 (Ohio Ct. App. Sept. 26, 2022). The Magistrate Judge recommended dismissal of the Petition after concluding that Petitioner's sole ground for relief—the claim of insufficient evidence—is meritless.

(Report, Doc. 11.) Petitioner's Objections (Doc. 14) are now before the Court.

## LAW AND ANALYSIS

Petitioner objects to the Magistrate Judge's conclusions concerning the lack of citations in Petitioner's Traverse and the dismissal of his Petition on the merits. (Objections, Doc. 14.) In accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(3), the Court is tasked with reviewing de novo any portion of a Report and Recommendation to which a proper objection was made. "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also Williams v. Parikh*, 708 F. Supp. 3d 1345, 1351 (S.D. Ohio 2023). With this framework in mind, the Court considers Petitioner's objections in turn.

### I. Citations to the Record

Petitioner's first two objections revolve around the Magistrate Judge's finding that Petitioner had failed to include required record citations in his Traverse. (Objections, Doc. 14, Pg. ID 1294-97.) It was ordered that "[a]ll papers filed in this case [after Respondent files the relevant state court record] shall include record references to the Page ID number." (Order, Doc. 2, Pg. ID 24.) The Court agrees with the Magistrate Judge's conclusion that the "[fact] portion of the Traverse contains not a single reference to the record." (Report, Doc. 11, Pg. ID 1283-84; Traverse, Doc. 9, Pg. ID 1251-54.) While Petitioner acknowledges this, he maintains that the argument section did include several citations to the record. (Objections, Doc. 14, Pg. ID 1294-95.) Some subsections—but not all subsections—within Petitioner's argument section contain record cites. (*See* Traverse,

2

Doc. 9, Pg. ID 1267-68.) The Court therefore overrules Petitioner's first two objections. However, at Petitioner's request, the Court will also consider the record cites as set forth in the Petition and Objections.

## II. Sufficiency of the Evidence

Petitioner also objects to the conclusion that there was sufficient evidence to support his convictions for rape, kidnapping, and felonious assault. (Objections, Doc. 14, Pg. ID 1297.)

The seminal Supreme Court case of *Jackson v. Virginia*, 443 U.S. 307 (1979), provides the applicable standard for evidentiary sufficiency in criminal cases and accompanying habeas cases under 28 U.S.C. § 2254. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). In *Jackson*, the Supreme Court articulated the key question as follows: "after viewing the evidence in the light most favorable to the prosecution, [could] *any* rational trier of fact . . . have found the essential elements of the crime beyond a reasonable doubt[?]" *Jackson*, 443 U.S. at 319. Notably, this standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Ultimately, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 656; *see also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam).

The already deferential standard expressed in *Jackson* becomes "doubly deferential" when considered in conjunction with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Parsley v. Skipper*, No. 20-2003, 2021 WL 1502725, at *2

3

(6th Cir. Feb. 17, 2021) (citing *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). "By virtue of the AEDPA's command that federal habeas relief may issue only if the state court's decision is 'contrary to' controlling federal law or 'based on an unreasonable application' of the controlling federal law, a state court determination that the evidence satisfied the deferential *Jackson* standard is itself 'entitled to considerable deference' by the federal habeas court." *Woods v. Parris*, No. 1:15-CV-1207, 2018 WL 4355208, at *5-6 (W.D. Tenn. Sept. 12, 2018) (quoting 28 U.S.C. § 2254(d); *Coleman*, 566 U.S. at 656). Together, the two-layered deference of *Jackson* and the AEDPA results in a "nearly insurmountable hurdle" for a petitioner seeking relief in this habeas context. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (en banc).

Petitioner presented his "insufficient evidence" arguments as to his rape, kidnapping, and assault convictions to the Ohio Court of Appeals for the Twelfth District. *See Singh*, 2022 WL 4476557, at *9. The Twelfth District began by correctly identifying the elements of the crimes in question:

> Appellant was convicted of rape in violation of R.C. 2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." A person acts purposely "when it is the person's specific intention to cause a certain result." R.C. 2901.22(A). "Force" is defined by the [Ohio] Revised Code as "any violence, compulsion, or constraint physically exerted by any means or against a person or thing." R.C. 2901.01(A)(1). Sexual conduct includes "vaginal intercourse between a male and female" and "without privilege to do so, the insertion, however slight, of any part of the body . . . into the vaginal or anal opening of another." R.C. 2907.01(A).
>
> Appellant was also convicted of kidnapping in violation of R.C. 2905.01(A)(4), which provides that "[n]o person, by force, threat, or deception, . . . shall remove another from the place where the other person

4

> is found or restrain the liberty of the other person, . . . [t]o engage in sexual activity, as defined in Section 2907.01 of the Revised Code, with the victim against the victim's will." Sexual activity means sexual contact or sexual conduct, including vaginal intercourse. R.C. 2907.01(C).
>
> Finally, appellant was convicted of assault in violation of R.C. 2903.13(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another." Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." Any injury, illness, or other physiological impairment, regardless of its gravity or duration, constitutes "physical harm" to a person. R.C. 2901.01(A)(3).

*Id.* at *10.

Then, after establishing the appropriate standard of review, the appellate court's analysis proceeded as follows:

> After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find appellant's convictions for rape, kidnapping, and assault are supported by sufficient evidence and are not against the manifest weight of the evidence. The state presented testimony and evidence from which the jury could have found all the essential elements of the offenses proven beyond a reasonable doubt. Jane testified that appellant picked her up near the Circle K on Pleasant Avenue and drove her to an abandoned building on East Avenue in Hamilton.
>
> Using his need to search for his missing wallet as a ruse, appellant approached Jane on the passenger side of the vehicle, grabbed her hair and forcibly pulled her away from the car and into a back room of the abandoned building. While forcing Jane into the abandoned building, appellant assaulted Jane, striking her in the head and beating her "in the front" and "in the back." Once inside the back room, appellant engaged in forcible sexual conduct with Jane, vaginally raping her with his penis before ejaculating inside of her.
>
> Jane was injured during the incident. As the [sexual assault nurse examiner ("SANE")] who examined Jane testified, Jane had an abrasion to her left nostril and upper lip as well as "multiple contusions, abrasions, erythema, which is redness, to [her] back" near her shoulders. Forensic evidence obtained during the SANE nurse's examination was later tested by a BCI

5

forensic scientist. Appellant's DNA was found on swabs taken from Jane's perianal area and labia minora and on the underwear Jane had worn on the night of the sexual assault. Jane's testimony, evidence gathered during her sexual assault examination, and the forensic analysis of the rape kit was evidence demonstrating appellant assaulted, kidnapped, and raped Jane.

Appellant challenges Jane's credibility and the weight given to her testimony. Appellant, who had admitted to picking up prostitutes in Hamilton, theorizes that Jane was a prostitute and that she and other prostitutes had developed a scheme to try to extort him for money or set up a civil suit for damages. Appellant contends the fact that Marie knew of a prostitute storing his semen in her freezer demonstrated prostitutes in Hamilton were acting with nefarious intentions.

Appellant contends Jane lied when she denied being a prostitute, lied about not knowing Marie or Daisy, and lied about not making plans with them or anyone else to sue appellant following the criminal trial. To support his claim that Jane was not a credible witness, appellant relies on the fact that Jane has a prior felony conviction for possession of heroin and the fact that she gave inconsistent stories about where appellant had picked her up on the night of the rape. When Jane originally gave a statement to officers, she had claimed that appellant had offered her a ride and picked her up at Circle K. However, after surveillance footage from the store showed her arriving at the store in appellant's car, Jane later changed her story and stated appellant picked her up "near" Circle K.

Appellant further contends Jane's appearance and lack of serious physical injuries in the aftermath of the alleged rape, assault, and kidnapping also cast doubt on the credibility of her testimony. Appellant argues that if the events described by Jane had actually occurred, then one would have expected the SANE nurse to have observed more injuries to Jane's scalp and face, such as missing hair, bruises, or scratches, as well as visible injuries to her back, thighs, or vagina, including bruises and cuts from broken glass that was spread out in the abandoned building. Appellant contends that one would have also expected to find blood on more than Jane's underwear. Appellant noted that Jane's shirt, though dirty, did not have any blood on it.

Appellant also contends that Jane's behavior during the kidnapping and sexual assault and her actions after the incident also cast doubt on the credibility of her story. Appellant notes that Jane admitted that she did not fight back or try to escape from appellant during the sexual assault, and once appellant finished and left her alone in the empty building, she did

6

not immediately call police. Instead, Jane got dressed, started walking home, and called her mother. She did not try to flag anyone walking or driving by for help. Jane then waited approximately eight hours to report the sexual assault to the police. After her initial report, Jane became uncooperative with the police, failing to appear for scheduled interviews. Jane waited until May 2020 to report seeing the man who raped her driving in the area where she lived.

The jury, through defense counsel's cross-examination of the state's witnesses and closing arguments, was presented with appellant's theory that Jane lied about the events that occurred on September 4, 2019. They heard about the inconsistencies in her story and were given the opportunity to weigh her version and explanation of events against appellant's version. Jane explained that once appellant had her in the back room of the abandoned building, she ceased resisting and screaming for help so that appellant would stop beating her. She also explained that after the sexual assault, she was "in shock of everything" and just wanted her mother and the safety of her home.

"[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. This is because, "[a]s the trier of fact in [the] case, the jury was in the best position to judge the credibility of witnesses and the weight to be given to the evidence." *State v. Johnson*, 12th Dist. Warren Nos. CA2019-07-076 and CA2019-08-080, 2020-Ohio-3501, ¶ 24. The jury considers any inconsistencies in the witnesses' testimony and resolves them accordingly, believing all, part, or none of each witnesses' testimony. *State v. Enoch*, 12th Dist. Butler No. CA2019-07-117, 2020-Ohio-3406, ¶ 27. Here, the jury clearly found Jane's testimony, which was corroborated by the visible injuries she sustained and the DNA evidence obtained from the rape kit, credible.

Given the evidence presented at trial, the jury was entitled to find beyond a reasonable doubt that appellant committed assault, kidnapping, and rape against Jane. Appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. The jury did not lose its way and create such a manifest miscarriage of justice that appellant's convictions must be reversed and a new trial ordered. Appellant's third and fourth assignment of error are overruled.

*Id.* at *10-12.

After thoroughly examining the record in this matter and Petitioner's Objections, the Court arrives at the same conclusion as the Magistrate Judge: "The Twelfth District's decision evinces the incorporation of the *Jackson* standard in Ohio law and reasonably determines that the State provided sufficient evidence to the jury to satisfy the *Jackson* standard." (Report, Doc. 11, Pg. ID 1283.)

Petitioner resists this conclusion by pointing to the following alleged shortcomings in the evidence. First, as for the rape conviction, Petitioner argues that the victim's failure to report the rape, her lack of medical injuries consistent with rape, and her selection of another man in a photo array demonstrate that the rape conviction is not based upon sufficient evidence. (Objections, Doc. 14, Pg. ID 1297.) Though the victim testified that she did not immediately call the police, she also testified that she was "in shock of everything," sought the safety of her own home, and was not avoiding the police. (Transcript, Doc. 4-1, Pg. ID 268, 277, 292.) Additionally, Petitioner's argument that the victim's medical injuries fail to evince rape is unpersuasive. The victim had injuries to her nostril, lip, and back. (*Id.* at Pg. ID 341-44.) The witness describing these injuries further testified that it "is not unheard of that we would not have visible injury in a sexual assault." (*Id.* at Pg. ID 347, 364.) In any event, it was the province of the jury to credit the victim's testimony that she was raped by Petitioner, even if it were uncorroborated by physical evidence. (*Id.* at Pg. ID 268); *see United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) ("[T]he testimony of a rape victim alone is sufficient to support a defendant's conviction."); *O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007). Finally, while the victim selected a different man as part of a police photo array at one point in time, Petitioner

8

does not contest the DNA evidence in this matter linking him to the crime. (Transcript, Doc. 4-1, Pg. ID 294, 1016-20.)

Turning to the kidnapping and assault convictions, Petitioner contends that the victim went willingly with him and that the medical reports do not comport with such an attack. (Objections, Doc. 14, Pg. ID 1297.) As Respondent notes, even if the victim had voluntarily accepted a car ride, this does not extend to the subsequent actions of Petitioner dragging her into an abandoned building and beating her. (Return of Writ, Doc. 5, Pg. ID 1240-41; Transcript, Doc. 4-1, Pg. ID 267-68); *see also Singh*, 2022 WL 4476557, at *14. Petitioner's contention that the medical examination failed to sufficiently evince an assault is similarly unconvincing. The record includes evidence that the victim suffered injuries to her nostril, lip, and back. (Transcript, Doc. 4-1, Pg. ID 337, 341-44.) It was also explained to the jury that "it is possible that injuries do appear [later]" and that "bruises don't form immediately." (*Id.* at Pg. ID 337.) The jury, for its part, may credit the victim's testimony of the assault and kidnapping without the corroboration of physical evidence. (*Id.* at Pg. ID 267-68); *see O'Hara*, 499 F.3d at 500; *Howard*, 218 F.3d at 565.

The Court, once again, emphasizes that on habeas review it does not reweigh the evidence, reassess witness credibility, or resolve conflicts in testimony—questions squarely reserved for the jury. *See Marshall v. Lonberger*, 459 U.S. 422, 433-34 (1983); *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992); *Brown v. Konteh*, 567 F.3d 191, 212 (6th Cir. 2009). "Jurors have broad discretion in deciding what inferences to draw from the evidence, and when there are a number of plausible ways to interpret the record, the state court's interpretation must not be disturbed by a habeas court as long as it is among those

9

plausible interpretations." *Waterford v. Washburn*, 455 F. Supp. 3d 579, 595 (M.D. Tenn. 2020) (quotations omitted). Instead, as to the specific question before the Court, Petitioner has not shown that the Twelfth District's application of *Jackson* is objectively unreasonable or based on an unreasonable determination of the facts. Thus, Petitioner's final objection is overruled.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

1. Petitioner's Objections (Doc. 14) are **OVERRULED**;
2. The Report and Recommendation (Doc. 11) is **ADOPTED** in full;
3. The Petition is hereby **DISMISSED WITH PREJUDICE**;
4. A certificate of appealability is **DENIED** under 28 U.S.C. § 2253(c) because reasonable jurists would not disagree with the Court's adjudication;
5. It is hereby **CERTIFIED** that any appeal of this decision would not be taken in good faith under 28 U.S.C. § 1915(a)(3); and
6. This matter is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
By: _____
JUDGE MATTHEW W. McFARLAND